IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MICHAEL FANELLI,<br><br>      Defendant. | CRIMINAL ACTION<br>NO. 18-543 |

**OPINION**

**Slomsky, J.**                               **July 5, 2022**

**I. INTRODUCTION**

Pro se Defendant Michael Fanelli moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. No. 47.) The Government has filed a Response in Opposition to Defendant's Motion. (Doc. No. 49.) The Motion is now ripe for disposition. For reasons that follow, Defendant's Motion for Compassionate Release (Doc. No. 47) will be denied.

**II. BACKGROUND**

  **A. Defendant's Criminal History**

On August 7, 2018, Defendant Michael Armand Fanelli robbed a PNC Bank located at 954 Youngs Ford Road in Gladwyne, Pennsylvania, stealing $7,012. (Doc. No. 49 at 1.) After a brief police chase, Fanelli was apprehended. (See id.)

On April 22, 2019, Defendant pled guilty to the sole count in the Indictment, charging him with armed bank robbery in violation of 18 U.S.C. § 2113(d). (Id.) He was sentenced to seventy-two months imprisonment for this offense. (Id. at 1.) He also was sentenced to an additional forty-eight months for a violation of his supervised release to which he was sentenced on a prior robbery conviction. (Id. at 1–2.) Thus, a total of 120 months imprisonment was imposed, with an

anticipated release date of February 13, 2027.  (Id. at 2.)  He is serving his sentence at the Federal Correctional Institution at Allenwood, Pennsylvania ("FCI Allenwood"), and, to date, has served approximately forty-five months of his sentence.  (Id.)  He has also accumulated six-months credit for good conduct.  (Id.)  Accordingly, he has served about fifty-one months of his 120-month sentence, during which he has committed no infractions.  (See Doc. No. 49.)

B.      **Procedural History**

On August 24, 2020, Defendant submitted an initial request for compassionate release to the Warden at FCI Allenwood based on a desire to care for his family members during the COVID-19 pandemic.  (Doc. No. 49 at 2.)  This request was denied.[1]  (Id.)  On October 6, 2020, Defendant filed his first Motion for Compassionate Release/Reduction in Sentence ("First Motion")[2] (Doc. No. 41).  On October 26, 2020, the Court denied the First Motion because Defendant did not demonstrate that he had exhausted the administrative remedies required under the First Step Act,

---

[1] Defendant Fanelli had filed two Motions for Compassionate Release before the one now before the Court.  (See Doc. No. 44 at 1; Doc. No. 46 at 1.)  In his First and Second Motions, he failed to show that he had complied with the First Step Act's administrative exhaustion requirement.  See 18 U.S.C. § 3582(c)(1)(A).  Further, the Government did not respond to either Motion and did not provide information regarding whether Fanelli had met the administrative exhaustion requirement.  (Doc. No. 49 at 2–3.)

It is now clear from the Government's Response in Opposition to the Third Motion that Mr. Fanelli has submitted a request to the Warden and waited the requisite thirty days.  (Id. at 3.)  Thus, Fanelli has exhausted his administrative remedies prior to bringing the instant Motion before the Court.  (Id. at 4.)

[2] In Defendant's First Motion, he requested the Court grant him compassionate release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A), and the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") so that he could care for his mother, aunt, and disabled sister. (Doc. No. 41 at 1–2.)  He feared that if either he or a family member were to contract the virus, he would potentially never see them again.  (Id. at 3.)

and because he did not indicate a particular risk posed to him by COVID-19.[3] (See id., referring to Doc. No. 44.)

On April 12, 2021, Mr. Fanelli filed his second Motion for Compassionate Release ("Second Motion") (Doc. No. 45). (Id.) In his Second Motion, Defendant again requested that the Court reduce his sentence under the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), due to the "comparison of extreme cases grant[ing] compassionate release [to] defendants who clearly posed much greater risks to society than [him]self, [his] mother's underlying health factors, [his] solid release and safety plan, . . . 'impeccable' clear conduct while incarcerated, programming and working full-time throughout incarceration, and the need to social distance[.]" (Id. at 2–3 (quoting Doc. No. 45 at 10).) Additionally, Defendant argued that the risk posed to him by COVID-19 was not "mere conjecture." (Doc. No. 49 at 3 (citing Doc. No. 46 at 2).)

On April 14, 2021, the Court denied the Second Motion, finding that Defendant had again failed to demonstrate that he had exhausted his administrative remedies and had failed to show that he was particularly vulnerable to COVID-19. (See Doc. No. 46.) The Court went further, noting that even if Fanelli had exhausted his administrative remedies, the lack of risk posed by COVID-19 to him was dispositive in denying the Motion. (Id. at 2 (citing United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the . . . prison system, particularly for inmates, [b]ut the mere existence of COVID-19 in society and the possibility that it might spread to a particular person alone cannot independently justify … release.").) Ultimately, the Court found that Defendant did not set forth any medical conditions

---

[3] The Court also noted that it lacked the authority to release Defendant under the CARES Act, which merely "grants the BOP expanded discretion to order home confinement." (Doc. No. 44 at 3.) The Act does not grant a District Court the jurisdiction to order home confinement. (Id.)

3

that would place him at an increased risk of severe illness from COVID-19, and thus the Motion was denied. (See Doc. No. 46 at 2–3.)

C. **Defendant's Pro Se Motion for Compassionate Release**

On March 15, 2022, Defendant filed the instant pro se Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). (See Doc. No. 47.) In the Motion, Defendant avers that he hopes to return home to help care for his mother and aunt, as well as his sister, whose multiple sclerosis has "gotten worse." (Id. at 1.) He further states that "[n]o more can be done at this point, than [sic] to waste away another 4 or 5 years while my family deteriorates without me." (Id.) Beyond Mr. Fanelli's family circumstances, he also mentions health issues he has that would warrant granting his Motion. (Id. at 2.) These include a cyst on his liver and lesions on his right kidney resulting from his poor nutrition at FCI Allenwood. (Id.) Defendant also asserts that he has endured intense pain in his prostate for nearly a year. (Doc. No. 47 at 2.) Ultimately, Fanelli seeks "the opportunity to come home sooner for my health, and for the sake of my family too." (Id.)

D. **The Government's Response in Opposition to Defendant's Motion**

On April 19, 2022, the Government filed a Response in Opposition to Defendant's Motion. (Doc. No. 49.) In the Response, the Government argues that the Motion should be denied because Defendant "has been vaccinated against COVID, and the family circumstances on which he bases his motion for release do not constitute extraordinary and compelling reasons for release." (Id. at 1.)

Regarding Fanelli's health issues, the Government concedes that medical records provided by the United States Bureau of Prisons ("BOP") show that Defendant, age 42, has "anxiety, unspecified urinary and prostate issues, two lesions on his right kidney, and is slightly overweight." (Id. at 4.) However, the Government maintains that these medical conditions are well-controlled

with medication provided by the prison, and that Defendant regularly engages in normal activities associated with daily living. (Id.) Also, the Government noted that Defendant is vaccinated for COVID-19, and additional booster shots are available upon request to the BOP. (Id.)

The Government further asserts that Defendant's family circumstances do not warrant compassionate release, since the guideline policy provides that "qualifying family circumstances can exist where the defendant is the only available caregiver for a spouse or for minor children." (See Doc. No. 49 at 20.) Here, the Government maintains, Defendant has not shown that any of his family members are incapacitated, nor that he is the only available caregiver for his relatives. (Id. at 21.)

Lastly, the Government notes that even if Defendant's reasons considered together constitute an extraordinary and compelling circumstance, relief must be denied because the factors under 18 U.S.C. § 3553(a) do not weigh in Defendant's favor. (Id. at 22.) As the Court will discuss infra, important factors under § 3553(a) include the nature and circumstances of the offense, the defendant's history and characteristics, and the need to protect the public from further crimes by the defendant. 18 U.S.C. § 3553(a). Regarding the nature of the offense and Defendant's history, the Government maintains that Fanelli continues to pose a danger to the community and therefore should be required to complete his entire sentence. (Doc. No. 49 at 23.) Namely, Defendant "placed two victim tellers in fear for their lives when he pointed what appeared to be a handgun at them during the robbery . . . ." (Id.)

Additionally, Fanelli was on federal supervised release for charges related to other bank robberies when the instant offense was committed. (Id.) His criminal history is listed in the Government's Response. (Id. at 24–25.) The Government asserts that his criminal history reflects a clear defiance of the law and others' safety. (Id. at 24–25.) Furthermore, the Government argues

5

that Defendant's crimes have become increasingly violent despite escalating sentences that have failed to deter him. (Id. at 25 (explaining that "Fanelli has shown that whenever in his adult life he has been out of custody[,] he commits crimes").) In sum, the Government argues that the compassionate release of Fanelli would not be appropriate given the offense he committed, the proper management of his health issues in prison, and the fact that he has not yet served even half of his sentence. (Id. at 26.)

### III. DISCUSSION

#### A. The Analytical Framework Regarding Motions for Compassionate Release Pursuant to § 3582(c)

Generally, a district court "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). There are, however, "a few narrow exceptions" to this general "rule of finality[,]" Freeman v. United States, 564 U.S. 522, 526 (2011), including the compassionate release statute, § 3582(c)(1)(A). As amended by the recently enacted First Step Act, § 3582(c)(1)(A) empowers a district court to modify a term of imprisonment on a defendant's motion after the defendant has exhausted his administrative remedies.[4] See § 3582(c)(1)(A)(i). The statute provides, in part, that a court:

---

[4] A defendant may file a motion for compassionate release directly with a district court after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A). In other words, before a defendant can make such a request to the court, he "must at least ask the Bureau of Prisons (BOP) to do so on [his] behalf and give [the] BOP thirty days to respond[,]" United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020), and if the BOP does respond adversely within the thirty days, to then exhaust any available administrative appeals during that period. See § 3582(c)(1)(A).

Here, Defendant has met the exhaustion requirement before filing the instant Motion. In its Response, the Government informs the Court that Mr. Fanelli's August 24, 2020 request to the warden for compassionate release was ultimately denied, but it does not specify when this denial occurred and does not provide any other details of the denial. (Doc. No. 49 at 2.) In any event, the Government concedes that more than thirty days have passed since Fanelli's

> [M]ay reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [§ 3553(a)] to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

§ 3582(c)(1)(A). Congress, however, has not defined the term "extraordinary and compelling reasons," except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to constitute an extraordinary and compelling reason. 28 U.S.C. § 994(t). Instead, Congress delegated the authority to define "extraordinary and compelling reasons" to the United States Sentencing Commission. Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), . . . that—
>
>> (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
>>
>> (2) the defendant is not a danger to the safety or any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>>
>> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

---

request was received by the warden, "and that he therefore has satisfied the administrative exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A)." (See Doc. No. 49 at 4.) Because over thirty days have elapsed from the date of Defendant's request to the warden and the filing of the instant Motion, as conceded by the Government, Mr. Fanelli has met the First Step Act's exhaustion requirement.

Application Note 1 to section 1B1.13 discusses the meaning of "extraordinary and compelling reasons," and lists three specific qualifying circumstances: (1) a defendant's medical condition, (2) age, or (3) family circumstances. § 1B1.13 n.1(A)-(C). This Note states:

> Provided the defendant [is not a danger to the safety of any person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant
>
>     (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
>     (ii) The defendant is—
>
>         (I) suffering from a serious physical or mental condition,
>
>         (II) suffering from a serious functional or cognitive impairment, or
>
>         (III) experiencing deteriorating physical or mental health because of the aging process,
>
>     that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant. The defendant
>
>     (i) is at least 65 years old;
>
>     (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and
>
>     (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family circumstances.

>   (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
>   (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

§ 1B1.13 n.1(A)-(C). Application Note 1 further provides a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13 n.1(D).[5]

The Application Notes only provide "helpful guidance" and are "not ultimately conclusive . . . ." United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (quoting United States v. Fox, Crim. No. 14-03, 2019 U.S. Dist. LEXIS 115388, at *5 (D. Me. July 11, 2019)). Since the Sentencing Commission has not yet amended section 1B1.13 or its commentary to account for the First Step Act, a district court has the authority to independently assess whether there are extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A). See Rodriguez, 451 F. Supp. 3d at 395.

In general, however, "[i]n the context of the current global pandemic, [c]ourts around the country have [only] granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19." United States v. Somerville, 463 F. Supp. 3d 585, 596 (W.D. Pa. 2020) (internal quotation omitted) (quoting United States v. Brooks, No. 07-20047, 2020 U.S. Dist. LEXIS 85671, at *14 (C.D. Ill. May 15, 2020)). In the Third Circuit, this means that "the mere existence of COVID-19 in society and the possibility

---

[5] Although by its express language section 1B1.13 applies to motions brought by the Director of the BOP, the current consensus is that the First Step Act removed this requirement. See generally United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (considering whether a defendant bringing a direct-to-court motion for compassionate release demonstrated "extraordinary and compelling reasons" and using § 1B1.13 as "helpful guidance.").

that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). In addition, "[m]ost, though not all, of the cases where compassionate release has been granted also involved some showing that COVID-19 is actually present, usually to a significant degree, in the facility where the prisoner is incarcerated." Somerville, 463 F. Supp. 3d at 596. Thus, "a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." Id. at 596-97.

If a district court determines that an extraordinary and compelling reason exists, it must then weigh that reason against the § 3553(a) factors to determine if a sentence reduction is warranted and, if so, the extent of such reduction. See id. at 588 ("[T]he Court must weigh [the] extraordinary circumstances against the ordinary sentencing factors under 18 U.S.C. § 3553(a)."). Section 3553(a) establishes factors for a court to consider in initially imposing a sentence. Not every factor is applicable, however, when considering a motion for compassionate release. In the instant case, the applicable factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]
>
> . . . [and]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

§ 3553(a)(1)-(2), (6). Therefore, if a balance of a defendant's extraordinary and compelling reasons with the § 3553(a) factors support a reduced sentence, and that reduction is consistent with applicable policy statements of the Sentencing Commission, a court may reduce a defendant's prison term, modify the terms of supervised release, or both.

### B. Defendant's Motion for Compassionate Release Will Be Denied

Defendant's Motion for Compassionate Release (Doc. No. 47) will be denied. First, his medical conditions and family circumstances do not constitute extraordinary and compelling reasons for his release, particularly because Defendant is fully vaccinated against COVID-19. Second, the relevant § 3553(a) factors do not weigh in favor of his compassionate release from FCI Allenwood. Each of these conclusions is discussed seriatim.

#### 1. Defendant's Medical Conditions and Family Circumstances Do Not Present an Extraordinary and Compelling Reason for His Release

Defendant argues that his various health conditions present an extraordinary and compelling reason to grant his Motion for Compassionate Release. (See Doc. No. 47 at 1–2.) In the instant Motion (Doc. No. 47), Defendant explains that he suffers from various health issues, including a cyst on his liver, lesions on his right kidney, and intense pain from an unspecified prostate problem. (See Doc. No. 47 at 2.)

In its Response, the Government concedes that Defendant's medical records, filed under seal as Exhibit "A", show that he is 42 years old, has anxiety, unspecified urinary and prostate issues, lesions on his right kidney, and is slightly overweight. (Doc. No. 49 at 4.) Despite these

11

conditions, Defendant appears to be well treated through medication provided by the prison. (Id.) Additionally, Defendant has received two doses of the Moderna COVID-19 vaccine and is "fully ambulatory and engages in all normal activities of daily living." (Id.)

Furthermore, Defendant is not terminally ill, nor does he have a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." (See id. at 9–10 (citing § 1B1.13 n.1(A)-(C).) As they relate to COVID-19, none of Defendant's conditions are notable risk factors according to the Centers for Disease Control. (See id. at 14.) The CDC has stated that obesity (a body mass index, or "BMI," over 30) does present a risk of a severe outcome from COVID-19. (Id.) However, Defendant is only "overweight," with a BMI of 27.9, which the CDC has opined "might present such a risk." (Doc. No. 49 at 14) (citing People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.)

The Government submits that without vaccination, Defendant's various medical conditions could qualify as an extraordinary and compelling reason for compassionate release. This point is moot, however, because Defendant has received two doses of the Moderna COVID-19 vaccine. (Id. at 16; see also United States v. Williams, Crim No. 19-71, 2021 WL 4860170, at *3 (N.D. Ind. Oct. 19, 2021) (stating that "[a]n overwhelming amount of district courts across the country have held that being fully vaccinated drastically reduces that risk of becoming severely ill and therefore denied compassionate release"); United States v. Reed, Crim. No. 18-78, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021) (explaining that the threat of COVID-19 alone does not warrant compassionate release once a vaccine is made available to the inmate).) Since the start of the pandemic, the Government has acknowledged the heightened chance of adverse outcomes in

unvaccinated inmates who present with medical risk factors identified by the CDC. (Id. at 16.) Here, these circumstances do not exist, as available vaccines "permit effective self-care against severe illness or death that may be caused by the coronavirus." (Id.)

It is unclear from Defendant's instant Motion whether his primary concern is COVID-19, as he does not reference it other than to explain why his family has been unable to visit him. (See id. at 1–2.) However, based on step one of the framework analysis discussed supra, the Court looks to whether any of Defendant's medical conditions are risk factors as they relate to COVID-19. Even if Defendant were not vaccinated, the general threat posed by COVID-19 to all non-immune persons in the country "does not alone provide a basis for a sentence reduction." (Doc. No. 49 at 11.) In fact, the Third Circuit Court of Appeals has previously held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

In response to the COVID-19 pandemic, the BOP implemented operational changes in consultation with the CDC and World Health Organization ("WHO"). (Doc. No. 49 at 5.) As part of its action plan, all newly arrived inmates must quarantine for fourteen days and then test negative before being released into the general population. (Id.) Additionally, all staff and inmates are required to wear masks, and every willing inmate under the control of the BOP has been vaccinated. (Id.) When outbreaks do occur, "any infected inmate is immediately quarantined, and all contacts . . . are tested and quarantined as necessary, until all contacts return at least two negative tests in a two-week period." (Id. at 6.)

13

As noted by the Government, the efforts of the BOP have been effective and are strongly aided by widespread vaccination. (Id.) Importantly, the BOP's success has extended to FCI Allenwood, where Defendant is housed. (Id. at 6.) Of the 1,198 inmates housed at FCI Allenwood, none are currently reporting positive, nor has there been a single death from COVID-19 at this institution.[6] (Id.)

Defendant's family circumstances likewise do not constitute an extraordinary and compelling reason for his compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). (Id. at 20.) As the Government notes in its Response in Opposition, "the guideline policy statement provides that qualifying family circumstances can exist where the defendant is the only available caregiver for a spouse or for minor children." (Id.) Here, Defendant argues that his early release is warranted because it will allow him to care for his aging mother and aunt, as well as his sister, who has multiple sclerosis. (Doc. No. 49 at 20.) Yet, Defendant has not shown that he is the only available caregiver for a family member. (Doc. No. 49 at 21.)

Moreover, courts in this District have yet to find that the need to care for elderly or ill family members "rises to the level of extraordinary and compelling circumstance warranting release." (Id., quoting United States v. Siberio-Rivera, Crim. No. 17-320, 2020 WL 7353367, at *1 (E.D. Pa. Dec. 15, 2020); see also United States v. Gaskin, Crim. No. 15-352, 2020 WL 7263185, at *4 (E.D. Pa. Dec 9, 2020) (explaining that the desire to care for elderly parents is not extraordinary); United States v. Ingram, Crim. No. 14-40, 2019 WL 3162305 (S.D. Ohio July 16, 2019) (stating that "[m]any, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary").) Despite Defendant's admittedly difficult family situation, courts in this

---

[6] The latest COVID-19 statistics as they relate to the BOP are available at www.bop.gov/coronavirus.

District have demonstrated that the desire to care for one's mother is not an extraordinary circumstance warranting compassionate release. (Id., citing United States v. Ellsworth-Daway, Crim. No. 17-506, 2021 WL 2823081, at *2–3 (E.D. Pa. July 7, 2021).) Thus, this analysis should be applied to Defendant's wish to care for his aging mother/aunt and his disabled sister.[7]

In short, neither Defendant's medical conditions nor his family circumstances present an extraordinary and compelling reason for his compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).

### 2. The § 3553(a) Sentencing Factors Do Not Weigh in Favor of Defendant's Compassionate Release

The Court must also consider whether the § 3553(a) factors discussed supra weigh in favor of release. (Doc. No. 49 at 23.) Here, relevant factors include the nature and circumstances of the offense, the defendant's history and characteristics, and the need to protect the public from further crimes by the defendant. 18 U.S.C. § 3553(a)(1)-(2). Additionally, the defendant must demonstrate that compassionate release will not depreciate the seriousness of the crime and will promote respect for the law and provide just punishment. (Id.) As noted below, none of these factors weigh in favor of granting Defendant's Motion for Compassionate Release.

The nature and circumstances of the offense must be considered in deciding whether to grant a Motion for Compassionate Release. 18 U.S.C. § 3553(a)(1). Here, the Government notes in its Response in Opposition that Fanelli "placed two victim tellers in fear for their lives when he pointed what appeared to be a handgun at them during the robbery and put the lives of all those traveling on the Schuylkill Expressway in danger when he attempted to flee from authorities."

---

[7] Here, Defendant seeks early release in part so that he may care for his disabled sister and aging mother and aunt. (Doc. No. 47 at 1.) Though Ellsworth-Daway states that the desire to care for a parent is not extraordinary, it would seem that the same analysis would apply to the desire to care for one's sibling or other family members.

(Doc. No. 49 at 23.) The seriousness of Defendant's offenses cannot be understated, and it does not counsel in favor of his release.

This Court must also consider the history and characteristics of the defendant as well as the need to protect the public from further crimes by him. 18 U.S.C. § 3553(a)(1), (a)(2)(C). As the Government noted, the instant robbery offense was only the latest in a long string of crimes committed by Defendant. (Doc. No. 49 at 23.) In fact, Fanelli committed the instant offense while on federal supervised release for a prior robbery. (See id.) The Government includes Fanelli's criminal record, which paints a picture of a person who "has scarcely been out of trouble with the law since he was [sixteen] years old." (Id. at 24.) Simply put, the escalatory nature of Defendant's criminal record indicates that his early release would unnecessarily subject the public to the risk that he will commit more crimes.

Further, as the Government has noted, Defendant's criminal record shows that he commits crimes when he is not in custody, crimes that have become progressively violent and serious. (See id. at 25.) The Court agrees that Defendant's past actions provide insight into the risks associated with granting his present Motion. After he committed six separate robberies in 2015, Fanelli was sentenced to thirty-seven months in federal prison. (Id. at 26.) After serving the majority of the sentence, he was placed on supervised release. (Id. at 25–26.) Just two months into his supervised release, Defendant committed the instant offense for which he is currently serving seventy-two months, along with the consecutive sentence of forty-eight months imposed for this violation of supervised release. (See Doc. No. 49 at 25–26.)

Lastly, granting Defendant's Motion for Compassionate Release would not reflect the seriousness of his offense, promote respect for the law, or provide just punishment, particularly because he has not yet served even half of his sentence. (See id. at 26.) Defendant put multiple

16

people in fear for their lives, and his past criminal record shows his tendency to disregard the law and commit further offenses. (See id. at 24–25.)

In sum, Defendant presents neither an extraordinary and compelling reason for his early release from FCI Allenwood, and the relevant § 3553(a) factors do not weigh in favor of granting his Motion.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release (Doc. No. 47) will be denied. An appropriate Order follows.